E-FILED
Monday, 26 October, 2026 12:58:31 PM
Clerk, U.S. District Court, ILCD

**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

STEVEN HUGHES,
Plaintiff,

v.

MEDTRONIC, INC. AND UNITED STATES FOOD AND DRUG ADMINISTRATION,
Defendants.

Case No. 1:26-cv-01207-JEH-RLH

**Order**

Now before the Court is Defendant Medtronic, Inc.'s Motion to Transfer Venue to the District of Minnesota.[1] (D. 5). For the reasons set forth *infra*, Defendant Medtronic, Inc.'s Motion to Transfer Venue is DENIED.

**I**

The Plaintiff, Steven Hughes (Hughes), commenced this action on February 23, 2026, against the Defendants, Medtronic, Inc. and the United States Food and Drug Administration (Medtronic and FDA, respectively). (D. 1). On March 26, 2026, Medtronic filed a Motion to Transfer Venue to the District of Minnesota. (D. 5). On April 9, 2026, Hughes responded. (D. 10). According to Medtronic, the FDA does not oppose the transfer. (D. 5 at ECF p. 1). This matter is fully briefed.

**II**

According to Hughes's Complaint, Medtronic is a global medical device manufacturer that designs, develops, manufactures, markets, and distributes spinal cord stimulator systems throughout the United States, including the State of Illinois.

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

[2] Medtronic's headquarters is in Minnesota. The FDA's headquarters is in Maryland. The FDA is responsible for reviewing and approving medical devices under the Federal Food, Drug, and Cosmetic Act (FDCA) and for regulating the marketing, labeling, and safety of Class III medical devices, including Medtronic's spinal cord stimulators.

One of Medtronic's medical devices is the Medtronic Intellis™ LT rechargeable neurostimulator, Model 97716 (the Device). Hughes alleges that Medtronic secured FDA clearance for hundreds of significant hardware and firmware modifications through serial Pre-Market Approval supplements rather than the statutorily required new Pre-Market Approval applications, despite knowing these modifications materially altered the Device's design and performance. This model was approved under Pre-Market Approval P84001 and supplemented through a series of streamlined FDA processes that did not require new clinical testing, including 30-day notices and real-time review pathways. Medtronic made post-approval modifications that materially altered the safety and functionality of the Device but did not disclose the modifications to physicians or patients.

Hughes is an Illinois resident. Hughes experienced chronic back and neck pain. The Device was marketed to Hughes as the answer to his pain; Medtronic advertised the Device as the "smallest implantable neurostimulator on the market" and represented the Device was safe and FDA approved. (D. 1 at ECF p. 6). On March 3, 2022, Hughes underwent a surgery implanting the Device. Hughes experienced complications and progressive injuries as a result of the Device. Specifically, Hughes experienced persistent and worsening pain and episodes of unintended stimulation and shocking sensations. The marketing to Hughes about the device, Hughes's surgery implanting the Device, and Hughes's complications and progressive injuries from the device all occurred in Illinois.

---

[2] The Court assumes, without finding, this information to be true for the purpose of considering Medtronic's Motion to Transfer Venue to the District of Minnesota.

Hughes brought this lawsuit against Medtronic and the FDA in Illinois under both Federal and Illinois law.

**III**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Courts consider both private and public interest factors, with substantial deference given to the plaintiff's choice of forum. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986).

Medtronic argues that this case should be transferred to the District of Minnesota under 28 U.S.C. § 1404(a).[3] Medtronic argues the transfer would serve multiple objectives of avoiding conflicting rulings and schedules, eliminating duplication in discovery, reducing litigation cost, and saving time and effort of the parties, attorneys, witnesses, and court. (D. 5 at ECF p. 5). Though the FDA has been silent on the transfer, Medtronic asserts that the FDA does not oppose it. *Id.* at ECF p. 1. Hughes, however, argues the transfer is improper because Medtronic failed to meet its burden of showing that Minnesota is clearly more convenient or that transfer would serve the interest of justice. (D. 10 at ECF p. 1-2).

**A**

When considering the convenience of the parties and witnesses, "courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum." *Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Courts also consider "the location of material events and the relative ease of access to sources of proof." *Id.* The

[3] Medtronic argued this case should be transferred from the Southern District of Illinois (where the case was filed) to the District of Minnesota. After this case was transferred to the Central District of Illinois, Medtronic failed to update the Motion to Transfer Venue with analysis regarding the Central District of Illinois.

moving party bears the burden of demonstrating that the proposed transferee forum is "clearly more convenient." *Id.* at 219–20.

The case centers around the Device and generally has two allegations: Hughes's was personally injured by the device, and the Defendants knowingly abused the federal regulatory process in approving the Device. The parties, witnesses, and evidence are spread between Illinois, Minnesota, and Maryland. The question is whether Medtronic demonstrated that the District of Minnesota is clearly more convenient than the Central District of Illinois.

In its motion to transfer, Medtronic attempts to paint this case as a regulatory case, arguing that the material events occurred in Minnesota. *See* (D. 5 at ECF p. 8) ("Plaintiff's primary allegations focus on regulatory submissions made by Medtronic and FDA's decision to approve them . . . "). This Court disagrees with Medtronic's narrative of the case, finding it oversimplifies the case in a way that deletes important substance. This case is first and foremost a personal injury case, and Hughes alleges he was injured by Medtronic cutting corners in obtaining federal approval of the device. The material events in this case are, or at least include, Medtronic's marketing to Hughes regarding the Device, Hughes's surgery implanting the Device, and Hughes's subsequent pain and complications, which all occurred in the Central District of Illinois.

Medtronic argues that most of the alleged acts or omissions relating to the design, labeling, regulatory submissions, marketing and sale of the Device occurred primarily in Minnesota, not Illinois.[4] Medtronic is correct, but the Device was advertised to Hughes in the Central District of Illinois, the Device was implanted in the Central District of Illinois, Hughes's injuries occurred in the Central District of Illinois, and Hughes's treatment and medical procedures occurred in the Central District of Illinois. While Medtronic's witnesses and evidence may primarily be in

---

[4] Notably, the challenged FDA decisions and the regulatory process occurred in neither Minnesota nor Illinois, as the FDA is headquartered in Maryland.

Minnesota (where the device was designed), Hughes's witnesses and evidence are in the Central District of Illinois. Medtronic's request to transfer would essentially shift the burden from Medtronic to Hughes, which is not a sufficient basis for transfer. *See Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) ("Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer."). At best, the question of convenience is a close call.

As Medtronic points out, the Seventh Circuit held that modern technology advancements, like "[e]asy air transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices, makes it easy these days for cases to be litigated with little extra burden". *Bd. of Trs., Sheet Metal Workers' Nat. Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000). Medtronic argues the ease of access does not weigh against transfer. This Court disagrees. The evidence in Minnesota will be document heavy (designs, regulatory submissions, marketing, etc.). Documents are sent with ease in today's digital age. By contrast, Hughes and all his medical providers are in the greater Peoria area. What is more convenient: Hughes and his Peoria medical providers travel to Minnesota to testify regarding a procedure in Peoria or Medtronic litigates in Peoria (where Medtronic markets and sells the Device)? Convenience disfavors transfer to the District of Minnesota.

Finally, Medtronic argues that transfer is much more convenient for Medtronic because its principal place of business is in Minnesota and Medtronic is facing similar lawsuits in Minnesota. This argument is not persuasive because Hughes has no ties to Minnesota, and transfer to the District of Minnesota would transfer the entire burden to Hughes, which is improper.

In conclusion, Medtronic failed to prove that the District of Minnesota is clearly more convenient than the Central District of Illinois. The factor of convenience strongly weighs against transfer.

**B**

When considering the interest of justice, courts consider the efficient administration of the court system, considering docket congestion and speed to trial, each court's relative familiarity with the relevant law, the respective desirability of resolving controversies in each court, and the relationship of each district to the controversy. *Rsch. Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Id.*

First, Medtronic argues that considering docket congestion and the likely speed of the case to trial favors transferring the case. Medtronic made this argument when this case was still in the Southern District of Illinois. Medtronic argued the median time from filing to disposition in the Southern District of Illinois is 12.8 months for civil cases as opposed to 9.3 months in the District of Minnesota. In the Central District of Illinois, the median time in civil cases is 8.6 months (as of June 30, 2026). With the case in the Central District of Illinois, docket congestion and likely speed of the case to trial leans in favor of denying the transfer.

Next, Medtronic argues that considering the court's relative familiarity with the law favors transfer because the District of Minnesota has four similar cases. This argument, however, is not persuasive to this Court because Hughes brings claims under Illinois tort law. The Central District of Illinois is more familiar with Illinois tort law than Minnesota.

Finally, Medtronic argues that the state of Minnesota and the community within have a greater interest in resolving this case because Medtronic is headquartered in Minnesota. The Court disagrees. By this logic, the Court should also transfer the case to Maryland because the FDA, the other defendant, is headquartered in Maryland. Illinois, and specifically the Central District, has the strongest interest in resolving this case. Hughes, who resides in the Central District, was marketed the

Device, implanted with the device, and experienced damages from the Device within the Central District of Illinois.

In conclusion, Medtronic failed to prove that the interest of justice favors transfer to the District of Minnesota.

**C**

Because Medtronic fails to establish both that the District of Minnesota is clearly more convenient and that transfer is in the interest of justice, the Court does not need to consider whether the case could have been brought in the District of Minnesota.

**IV**

For the reasons set forth *supra*, Defendant Medtronic, Inc.'s Motion to Transfer Venue is DENIED. Per the Court's 06/08/2026 Text Order, Defendant Medtronic's answer or other response to Plaintiff Hughes's Complaint is due 30 days following the entry of this Order.

Should a party file a motion to reconsider which this Court denies, it may enter an Order to Show Cause why the losing side should not pay the attorneys' fees of the winning side if the Court concludes that the motion did not raise new issues or arguments that could have been raised when filing the original motion.

*It is so ordered.*

Entered on October 26, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE